IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

ANDERSON DIVISION

| | |
|---|---|
| Mark Steven Wagman, #35505-048,<br><br>      Petitioner,<br><br>vs.<br><br>Warden FCI-Edgefield; and<br>Federal Bureau of Prisons,<br><br>      Respondents. | Civil Action No. 8:04-22822-SB-BHH<br><br>**REPORT OF MAGISTRATE JUDGE** |

The petitioner, a federal prisoner proceeding *pro se*, seeks habeas corpus relief pursuant to Title 28, United States Code, Section 2241.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review posttrial petitions for relief and submit findings and recommendations to the District Court.

**FACTS PRESENTED**

The petitioner is currently serving a 121-month term of incarceration imposed by the United States District Court for the District of Nevada. He was sentenced on August 20, 2001, for violations of 18 U.S.C. §841(a)(1) and (b)(1)(c), manufacturing a controlled substance. The petitioner began his sentence on October 4, 2001, and his anticipated release date is August 13, 2009, via Good Conduct Time release.

The petitioner filed this §2241 action on November 1, 2004. He originally named Taft Correctional Institution (TCI) and its warden, Ray Andrews, together with the Federal Bureau of Prisons, as respondents in this action. By order dated November 17,

2004, this court dismissed TCI and Warden Andrews as respondents and substituted Warden, FCI-Edgefield as respondent.

On January 10, 2005, the respondents filed a motion to dismiss or, in the alternative, for summary judgment. By order of this court filed January 20, 2005, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the petitioner was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. The petitioner filed a response in opposition to the motion on July 1, 2005.

In this habeas action, the petitioner challenges a disciplinary action which was taken against him by the staff at TCI, a contract prison facility in California used by the Federal Bureau of Prisons. On September 13, 2003, while housed at TCI, the petitioner tested positive for marijuana in his system following a random drug test. As a result of this positive test, the petitioner was charged with a violation of Code 112, "use of narcotics, marijuana, drugs or related paraphernalia not prescribed for the individual by medical staff."[1]

The petitioner denied smoking any marijuana. Following a disciplinary hearing, the hearing officer (DHO) found that the petitioner committed the prohibited act as charged. The DHO imposed sanctions, consisting of 30 days in disciplinary segregation, disallowance of 27 days good conduct time, loss of social visitation for six months, loss of social telephone calls for six months, and loss of commissary privileges for six months.

The petitioner was advised of his right to appeal the proceedings directly to the Regional Office. He filed an administrative grievance challenging the disciplinary action at TCI. This grievance was denied. On October 14, 2003, the petitioner's custody classification was updated to reflect the latest disciplinary action (the drug charge). The warden at TCI requested that the petitioner be transferred to any appropriate medium

---

[1] 28 C.F.R. § 541.13, Table 3, Code 112.

security facility. The request was granted, and on December 3, 2003, a transfer order was signed directing that the petitioner be transferred from TCI to FCI Edgefield. The petitioner left TCI on December 19, 2003 and arrived at Edgefield on February 12, 2004.

## ANALYSIS

As an initial matter, the respondents argue that the Federal Bureau of Prisons (BOP) is not a proper party to this action. The only proper respondent in a 28 U.S.C. §2241 action is the custodian of the petitioner, which in this case would be the warden of FCI Edgefield. *Braden v. 30th Judicial Circuit Court*, 410 U.S. 484, 495 (1973). Accordingly, the respondents move to dismiss the Federal Bureau of Prisons as a respondent to this action.[2] The petitioner does not really address this issue, stating only:

> The proper respondents are F.C.I. Warden John LaManna and the Bureau of Prisons for the Taft Correctional Institutions are a private party under contract. And this becomes the responsibility of Federal Bureau of Prisons for their wrongful action. And to enforce the policies of the contract to honor their laws, regulations, policies, and program statements.[sic]

(pet. memo at 2). It is clear, under *Braden*, that the warden of the prison where the petitioner is being held is the only proper respondent in a habeas action. Because respondent John LaManna, Warden of FCI Edgefield, is the petitioner's present custodian, the court finds it appropriate to dismiss the Federal Bureau of Prisons from this action.

---

[2]The petitioner initially listed Warden Ray Andrews, TCI, and the BOP as respondents (See Doc. 2, entitled 28 U.S.C §2241). In an order dated November 16, 2004, this court ordered the Warden of FCI-Edgefield be substituted as a party for TCI and Warden Andrews because a prisoner's custodian is the proper respondent in a habeas corpus action. *Braden*, 410 U.S. at 494-95. That order did not address the fact that BOP was an improper party, nor did it direct that BOP be added as a party, as suggested by the respondents in their brief.

***Disciplinary Hearing and Classification***

Under 28 U.S.C. §2241, federal district courts have jurisdiction to grant writs of habeas corpus to petitioners who are held in custody by the federal government in violation of the Constitution, laws, or treaties of the United States. *See Bowrin v. United States Immigration and Naturalization Service*, 194 F.3d 483, 487 ( 4th Cir. 2000).

The petitioner alleges that his conviction in the prison disciplinary action violated his rights to due process. He further alleges that his placement in segregation and, ultimately, his transfer to Edgefield were the result of retaliation by prison officials.

Federal inmates are required to exhaust their administrative remedies before filing habeas actions. *See United States v. Wilson*, 503 U.S. 329, 334-337 (1992); *Brown v. Smith*, 828 F.2d 1493, 1495 (10th Cir. 1987). The BOP has a three-tiered administrative grievance process. *See* 28 C.F.R. §§542.10, *et seq*. The first step involves informal resolution at the institutional level. If the matter cannot be resolved informally, the inmate may file a formal written complaint to the warden. The matter is investigated, and a written response is provided to the inmate. If the inmate is dissatisfied with the response, he may appeal to the regional director. If dissatisfied after that level, the inmate may appeal to the General Counsel. Appeals of disciplinary actions bypass the institutional level and are initially filed at the regional level. A claim is not exhausted until it has been filed at all necessary levels.

In this case, the petitioner properly filed an administrative challenge to the disciplinary action imposed at TCI, alleging that he did not receive due process because there was insufficient evidence to support his conviction. He did not, however, file any appeal or grievance regarding his transfer or claims of retaliation by TCI staff.

Due process in inmate disciplinary proceedings is satisfied when an inmate receives a finding from an impartial decision maker, written notice of the charges, an opportunity to appear at the hearing, a conditional opportunity to present documentary

4

evidence and testimony from witnesses, and a written statement of the evidence relied on and the reasons for the disciplinary action.  *Wolff v. McDonnell,* 418 U.S.539 (1974).

The administrative record here shows that the due process requirements of *Wolff* were met.  The petitioner was given advance written notice of the charges against him more than 24 hours before the DHO hearing.  He was given the opportunity to present evidence in the form of documents or witnesses and to have the assistance of a staff representative, but declined to take either opportunity.  The record of the hearing reflects that the petitioner appeared and made a statement to the decision maker.  The record also shows the evidence relied upon and the reasons for the decision and the sanctions imposed (ex. 9).

The United States Supreme Court has held that, in a prison disciplinary proceeding, due process is satisfied if there is "some" evidence to show that the inmate committed the offense.  *Superintendent, Massachusetts Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985).  Review of the record here shows that there was some evidence to support the DHO's decision.  The DHO relied upon the report of the urine testing from the National Toxicology Labs, as well as the chain of custody indicating that the petitioner certified that he provided the sample referred to in the results (ex. 9).  Clearly , there is some evidence to support the decision of the DHO.

The petitioner's argument that the evidence before the DHO was insufficient to support the DHO's finding because the DHO relied upon an unconfirmed Enzyme-Multiplied Immunoassay Technique (EMIT)[3] test is without merit.  The record shows that the initial positive test result of the petitioner's urine was confirmed by a gas chromatography /mass spectrometry (GC/MS) test.  Accordingly, the positive test result, together with the second confirmatory test, provides some evidence of drug use.

---

[3] In two unpublished decisions, the Fourth Circuit Court of Appeals has specifically held that "the EMIT test, scientifically recognized as a valid medical procedure, constitutes some evidence to support the impositions of disciplinary sanctions."  *Dodek v. Drake*, 1989 WL 141664*1 (4th Cir., Nov. 16, 1989); *Thompson v. Hall*, No. 88-6525 (4th Cir., Aug. 14, 1989).

5

The petitioner also contends that the chain of custody of his urine sample was improper because the sample was not sealed in front of the petitioner. This court notes that this argument was not raised in the petitioner's grievance procedure, and therefore is barred from review by this court. Nevertheless, the argument is without merit.

The record shows that the procedure used by the prison for obtaining the petitioner's urine sample was proper. The petitioner was searched and directed to wash his hands prior to collection of the sample. He was positively identified and the sample was collected under direct observation. The collecting officer ensured that the specimen container was tightly sealed, and placed the bar code label and security seals on the bottle. The petitioner was allowed to examine and verify the specimen numbers on the chain of custody form, the log and the security seals. The petitioner initialed the seals and signed the certification form, indicating that sample number B01089836 was obtained in accordance with the required procedures. The petitioner certified that the specimen was sealed in his presence and that the information on the labels and form was correct (r.m.s.j. Ex. 5).

The petitioner had the option to refuse to sign the certification form if he believed that the urine collection was handled improperly. His failure to do so precludes him from now asserting this argument. Moreover, the record indicates that the proper procedures were followed in the collection of the petitioner's urine sample.

The petitioner also contends that Motrin or Ibuprofen can cause false positives in the EMIT test due to cross-reactivity. While this problem used to be possible, once this cross-reactivity was discovered, the manufacturers of the EMIT tests changed the test to screen out the possibility. *See Burka v. New York Transit Authority*, 739 F.Supp. 814, 837 (S.D.N.Y. 1990). Furthermore, to combat possible cross-reactivity, the test manufacturers recommend that the immunoassays be confirmed by the GC/MS technique, which virtually eliminates the possibility of cross-reactivity. As noted by one court, "[t]here is no cross reactivity with GC/MS. *The drug structure is either present, or it is not.* This is the gold

6

standard for the identification of a compound in a specimen." *United States v. Klimek*, 2004 WL 601686*3 (S.D.N.Y. March 2, 2004), aff'd, 411 F.3d 50 (2nd Cir. 2005)(emphasis in original).

The record here clearly shows that the initial positive test result was confirmed by GC/MS prior to being reported to TCI. Upon receipt of the laboratory report, TCI staff contacted medical staff to determine whether there were any legitimate reasons that the petitioner's urine would have tested positive for THC metabolites. After reviewing the medical records, the Health Services Administrator certified that there was no medical reason for the positive test result. Accordingly, the test results constituted "some" evidence and were properly relied upon by the DHO.

The petitioner also alleges that his transfer to FCI-Edgefield was inappropriate and in retaliation for his complaints to his case manager.[4] He asserts that the transfer was:

> retaliatory, arbitrary and capricious because of the fact that Petitioner was questioning the incident report about his guilty verdict by the DHO to the use of narcotics marijuana, and the false confirmation given by Hospital Staff to the medication Petitioner was taking that was prescribed by the Hospital Staff."

(pet. at 10). The petitioner complains that he was transferred to a prison 2000 miles away from his family, including his 83-year-old mother. *Id.*[5]

Inmates have no protected liberty interest in remaining at a particular prison. *Sandin v. Conner*, 515 U.S. 472, 483-484 (1995); *see also Meachum v. Fano*, 427 U.S. 215 (1976)(a transfer of a prisoner from one institution to another does not implicate a liberty interest). The petitioner's claim is without merit. To the extent that the petitioner claims his transfer was retaliatory, this claim is also without merit. The petitioner has failed to make any showing at all that his transfer was retaliatory. *See Adams v. Rice*, 40 F.3d 72, 75 (4th

---

[4] As noted above, the petitioner did not raise this issue in his administrative grievances. While technically not exhausted, this court briefly addresses this issue out of an abundance of caution.

[5] This court notes that a notice of change of address in the record, dated July 20, 2005, indicates that the petitioner has been transferred to a federal prison in California.

Cir. 1994)(in order to state a retaliation claim, petitioner "must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right."). In fact, the record reflects that the petitioner was properly transferred because he was found to have violated a prison disciplinary rule.

## **CONCLUSION AND RECOMMENDATION**

The present record clearly establishes that the petitioner is not entitled to relief pursuant to 28 U.S.C. §2241. Accordingly, it is recommended that this action be dismissed.

IT IS SO RECOMMENDED.

s/Bruce H. Hendricks
United States Magistrate Judge

August 9, 2005

Greenville, South Carolina